Farrell G. and Vicki A. FORSBERG, Plaintiffs and Appellees,

v.

BURNINGHAM & KIMBALL, a Utah general partnership; Christensen & Kimball, a Utah general partnership as partner of Burningham & Kimball; Victor M. Kimball, individually and as general partner of Christensen & Kimball, Spectrum Development Corporation, a Utah corporation, as partner of Burningham & Kimball, Defendants and Appellants.

No. 930418–CA.

Court of Appeals of Utah.

March 13, 1995.

Rehearing Denied March 24, 1995.

24

Craig G. Adamson, Eric P. Lee, Cameron S. Denning, Dart, Adamson & Donovan, Salt Lake City, for appellants.

Harold A. Hintze, Salt Lake City, for appellees.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

BILLINGS, Judge:

Burningham & Kimball (sellers) appeal the trial court's finding that they misrepresented the size of the lot in connection with a home purchased by Farrell G. and Vicki A. Forsberg (buyers).[1] Sellers also claim the trial court's award of damages is not supported by the evidence. We affirm in part and reverse and remand in part.

## FACTS

Sellers purchased approximately twenty building lots in the Benchmark subdivision. To facilitate the lots' resale, sellers built homes on some of the lots, including the home at issue in this appeal. Buyers' home is situated in the foothills, facing east with the backyard sloping downward to the west. The back of the property overlooks a large office building located on Foothill Drive known as the "GMAC" building.

During the construction of the home, fill dirt was removed from the excavation and placed at the rear of the property, covering the survey stakes marking the back corners

---

1. In their cross-appeal, buyers complained about many defects in the construction of the home, urging this court to adopt an implied warranty of habitability as to the sale of new homes. However-  er, prior to oral argument this claim was dismissed pursuant to stipulation. We therefore do not reach this issue.

of the lot. After the stakes were covered, sellers had a row of poplar trees planted to create a sight barrier between the home and the GMAC building. The trees were planted by a landscaper hired by sellers and without regard to the actual boundary of the property.

Buyers saw a sign advertising the home for sale and contacted their licensed real estate agent, who took them to the home, where they inspected the premises. During the visit, buyers obtained a "fact sheet" which had been left in the home. The sheet was prepared by a real estate agent whom sellers had engaged to list the home for sale. When the realtor's listing contract expired, sellers blocked out the realtor's name, placed their own names on the sheet, removed a statement at the bottom of the sheet providing that the information was "[r]eliable but not guaranteed," and continued to make the fact sheet available to prospective buyers.

There were no stakes in the backyard or other markers to indicate to buyers the rear boundaries of the lot. The fact sheet indicated that the "yard size" was 98′ × 102′, with a "flat back yard with room for a pool." The true dimensions of the lot are 98.23 feet along the north side, 122.40 feet on the east side, 102.38 feet on the south side, and 77.85 feet along the west side. The dimension 98′ × 102′ represents an average of all four sides.

Buyers thereafter returned to the home and inspected it with seller, Victor M. Kimball (Kimball). On this inspection, the parties had a conversation regarding the size of the back yard. Buyers indicated that they were interested in a "spacious" backyard and inquired what the exact boundaries of the yard were. Kimball responded that he was unsure of the boundaries, but assured buyers that the row of poplar trees planted at the west end of the yard was "within the property line."

Buyers purchased the home on or about November 17, 1987. Several months later, they had the backyard surveyed and learned that the row of poplar trees was not within the property line, but was three to fifteen feet beyond the property line.[2]

At trial, the judge found the combination of the fact sheet, the planting of the poplar trees, and Kimball's suggestion that the trees were "within" the boundary constituted a negligent misrepresentation of the lot size and assessed damages in the amount of $21,767.90. Sellers appeal.

## NEGLIGENT MISREPRESENTATION

The tort of negligent misrepresentation allows

a party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact [to] recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact.

*Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986); *accord Jardine v. Brunswick Corp.,* 18 Utah 2d 378, 423 P.2d 659, 661–62 (1967); *see also* Restatement (Second) of Torts § 552(1) (1976).[3]

Sellers claim the trial court erred in finding that they negligently misrepresented the size of the lot. A trial court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to

2. The rear boundary of the lot angles off, therefore the trees were three feet beyond the boundary line in some areas and fifteen feet in other areas.

3. This section states in relevant part:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Restatement (Second) of Torts § 552(1) (1976).

judge the credibility of the witnesses." Utah R.Civ.P. 52(a).

Although the trial court's findings based on the fact sheet are somewhat problematic, the record supports that when buyers inquired about the precise boundaries of the backyard, Kimball responded that he did not know where the exact corners of the lot were, but indicated that the row of poplar trees was within the rear boundary of the lot.[4] This evidence, by itself, fully supports the trial court's findings. Further, sellers had a pecuniary interest in the transaction and were presumably in a superior position than buyers to know the material facts regarding the lot. *See Price–Orem Inv. Co.,* 713 P.2d at 59.

Thus, on the record before us, we cannot say the trial court's findings that sellers misrepresented the actual size of the lot were clearly erroneous.

## REASONABLE RELIANCE

■ Additionally, sellers argue the trial court erred when it determined that buyers reasonably relied upon their representation regarding the size of the lot.[5]

With respect to whether reliance is reasonable, the supreme court has stated that one who complains of being injured by a false representation

cannot heedlessly accept as true whatever is told him, but has the duty of exercising such degree of care to protect his own interests as would be exercised by an ordinary, reasonable and prudent person under the circumstances; and if he fails to do so, is precluded from holding someone else

to account for the consequences of his own neglect.

*Jardine v. Brunswick Corp.,* 18 Utah 2d 378, 423 P.2d 659, 662–63 (1967). Sellers assert that if buyers were genuinely concerned with the actual size of the lot, they should have obtained an independent survey of the property. Buyers contend that in the absence of facts putting them on notice of an alleged misrepresentation, they had no duty to investigate. They cite *Dugan v. Jones,* 615 P.2d 1239 (Utah 1980), in support of this proposition.

In *Dugan,* the buyers claimed a real estate agent misrepresented the acreage conveyed in a land sales contract. The court explained:

" '[A] vendor may be liable in tort for misrepresentations as to the area of land conveyed, notwithstanding such misrepresentations were made without actual knowledge of their falsity.' The reason, of course, is that the parties to a real estate transaction do not deal on equal terms. An owner is presumed to know the boundaries of his own land . . . . If he does not know the correct information, he must find out or refrain from making representations to unsuspecting strangers. 'Even honesty in making a mistake is no defense as it is incumbent upon the vendor to know the facts.' "

*Id.* at 1246 (quoting *Sorenson v. Adams,* 98 Idaho 708, 571 P.2d 769, 775–76 (1977) (citations omitted)). Further, the court stated, "[A] vendee of real property, *in the absence of facts putting him on notice, has no duty to investigate* to determine whether the vendor

---

4. In relevant part, Forsberg testified, with our emphasis:

> Q: Did you have some discussion with Mr. Kimball about those poplar trees?
> A: Yes, I did.
> Q: Tell us what you said and what he [Kimball] said, as best you can?
> A: Well, I was trying to confirm the boundaries of the backyard, and I asked him about the poplar trees. And he related to me that *the poplar trees were a reflection of the backyard, roughly the back west boundary of the yard.*
> . . . .
> A: He described that the poplar trees—because there was no landscape markers there, I was concerned as to exactly where the back

corners and back property line were, and he assured me that *the poplar trees were within the property of the residence for sale.*

Both on direct and cross examination, Kimball testified that he did not know the exact dimensions of the lot and denied the statement that he represented that the row of poplar trees reflected the rear boundary of the lot. Although this testimony is in conflict, we defer to the fact finder. *See* Utah R.Civ.P. 52(a).

5. Specifically, the court found: "The Forsbergs reasonably relied upon the representations of the Defendants relative to the size of the property. There was no notice whatsoever at the closing as to the size of the property. . . ."

has misrepresented the area conveyed." *Id.* at 1247 (emphasis added).

· Here, sellers made a specific representation about the size of the yard in the fact sheet. Moreover, they planted a row of trees at the rear of the lot to create a barrier between the home and the neighboring GMAC building without regard to the rear boundary of the lot. Finally, sellers represented that those trees were within the rear boundary. Notwithstanding the fact that Kimball stated that he did not know the "exact corners" of the lot, the trial court found that buyers were not put on notice that the lot was smaller than represented by sellers. The trial court thus implicitly found that buyers had no duty to investigate further the true boundaries of the lot before completing the purchase of the home. Based upon the foregoing, we cannot say the trial court's finding that buyers' reliance was reasonable is clearly erroneous.

## DAMAGES

■ Finally, sellers maintain that the trial court miscalculated the damages, and therefore erred when it assessed damages in the amount of $21,767.90.

■ The proper measure of damages in an action for negligent misrepresentation is that "necessary to compensate the plaintiff for the pecuniary loss to him which the misrepresentation is the legal cause." Restatement (Second) of Torts § 552B(1) (1976). Such damages may include "the difference between the value of what [plaintiff] has received in the transaction and its purchase price or other value given," *id.* § 552B(1)(a), and any "pecuniary loss suffered ... as a consequence of the plaintiff's reliance upon the misrepresentation," *id.* § 552B(1)(b). This court will presume a trial court's award of damages to be correct and will overturn it only if it is clearly erroneous with no reasonable support in the evidence. *Gillmor v. Gillmor,* 745 P.2d 461, 462 (Utah App.1987), *cert. denied,* 765 P.2d 1278 (Utah 1988).

The trial court found:

27. The property, as represented by the Defendants, would contain 9,996 sq. ft. The actual size of the property is approximately 4,628 sq. ft. The fair market value of the property, as indicated by the Defendants['] own testimony, is the sum of $3.85 per sq. ft. and the Plaintiffs thereby incurred damages as a direct and proximate result of the Defendants' negligent misrepresentation in the sum of $21,767.90.

The trial court seems to have accepted the position of buyers' counsel that buyers thought they were receiving a *backyard* that was 98' × 102'. However, there is simply no evidence to support this position. Neither party testified that they believed the backyard was 98 feet deep.

The trial court's calculation of damages is not supported by the record. Buyers did not discuss with sellers whether the backyard extended 98 feet from the foundation of the house. Rather, buyers believed the rear boundary of the lot was within "a couple of feet" of the row of poplar trees. On cross-examination, Forsberg testified that the furthest distance between the home and the row of trees was 45 feet—a distance which he testified he would consider spacious.

■ The proper calculation of damages is the difference in the value of the property buyers thought they were receiving and the value of the property they actually received. *See* Restatement, *supra,* § 552B(1). We therefore vacate the award of damages and remand for the trial court to determine the difference in value between the property buyers thought they were receiving, calculated with reference to a boundary "a couple of feet" beyond the row of poplar trees and extended in a reasonable manner from the marker, and the amount they actually received.

## CONCLUSION

We affirm the trial court's finding that sellers negligently misrepresented the size of the lot purchased by buyers. Moreover, we hold that the trial court's finding that buyers reasonably relied on that misrepresentation was not clearly erroneous. Finally, we re-

verse the damages awarded and remand to determine the difference in value between the property buyers thought they were receiving and the property they actually received.

ORME and JACKSON, JJ., concur.