**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 4 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UTAH FOAM PRODUCTS CO., a
Utah corporation,

      Plaintiff-Appellant-Cross-
      Appellee,

v.

THE UPJOHN COMPANY, a
Delaware corporation,

      Defendant-Appellee-Cross-
      Appellant.

Nos. 97-4007, 97-4008

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 87-C-955-G)**

---

C. Richard Henriksen, Jr., Henriksen & Henriksen, P.C., Salt Lake City, Utah,
(Ralph W. Curtis, Henriksen & Henriksen, P.C., Salt Lake City, Utah, with him
on the briefs) for Plaintiff-Appellant.

Jonathan A. Dibble, Ray, Quinney & Nebeker, Salt Lake City, Utah, (Stephen B.
Nebeker and Rick B. Hoggard, Ray, Quinney & Nebeker, Salt Lake City, Utah,
with him on the briefs) for Defendant-Appellee.

---

Before **TACHA, BRORBY** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Plaintiff-Appellant Utah Foam Products Co. ("Utah Foam") appeals from a jury verdict and order of damages in its favor on its fraud and negligent misrepresentation claims against Defendant-Appellee, The Upjohn Company ("Upjohn"). Utah Foam claims that the district court erred in making certain evidentiary rulings, in dismissing Utah Foam's claim under the Utah Unfair Trade Practices Act, and in denying Utah Foam's request for prejudgment interest on damages awarded. Utah Foam also claims that the district court judge erred in refusing to recuse himself from the case. Upjohn brings a cross-appeal, claiming that the district court erred in refusing to grant judgment as a matter of law in favor of Upjohn on Utah Foam's fraud and negligent misrepresentation claims. We affirm the jury's verdict and all of the district court's rulings.

**Background**

This lengthy litigation grew out of a dispute about the price Upjohn charged Utah Foam for polymeric isocyanate (trade name "PAPI"), a chemical made by Upjohn and used by Utah Foam in making rigid sprayable polyurethane foam, an insulating material. From 1978 until 1986, Upjohn contracted to supply Utah Foam with PAPI 27, one of the types of isocyanate made by Upjohn. According to Utah Foam, Upjohn fraudulently and negligently misrepresented to Utah Foam that Utah Foam would always be the recipient of Upjohn's "best

price" for PAPI.  See Utah Foam Products Co. v. The Upjohn Company, 930 F. Supp. 513, 516 (D. Utah 1996).  Utah Foam discovered this alleged fraud and misrepresentation when circumstances forced Utah Foam to buy PAPI 27 from one of Utah Foam's competitors, and found that the competitor was able to offer the product to Utah Foam at a lower price than that charged by Upjohn.

In July, 1987, Utah Foam filed suit against Upjohn, claiming that Upjohn violated Utah's Unfair Practices Act, breached the contract, and committed fraud and negligent misrepresentation.  Utah Foam requested compensatory and punitive damages.  During a drawn-out period of pretrial litigation, the district court repeatedly ruled that Upjohn's records regarding the sales of PAPI 135 would not be subject to discovery in this case, because PAPI 135 was not of like grade and quality to PAPI 27, the subject of Utah Foam's Unfair Practices claim.[1] The district court also denied Utah Foam's motions to compel production of sales records of CPR, a wholly-owned subsidiary of Upjohn, on the basis that all deliveries of PAPI from Upjohn to CPR qualified as intra-company transfers, and not sales, and thus they were irrelevant to Utah Foam's claims.  On January 12,

---

[1] Shortly before trial, Utah Foam successfully argued to the district court that Upjohn's PAPI 135 records were relevant to its fraud claim.  However, in light of Utah Foam's unjustified tardiness in making this argument for the first time so close to the scheduled start of trial, the court limited discovery of those records to those already prepared by Upjohn (years 1983-1985).  The court refused to order production of PAPI 135 records from earlier years, on the grounds that so doing would cause real prejudice to Upjohn.

1994, the district court granted summary judgment to Upjohn on Utah Foam's state price discrimination claim. The district court dismissed Utah Foam's breach of contract claim on October 18, 1994. On December 18, 1995, the district court ruled that Utah Foam's experts' testimony as to the calculation of damages would be limited to proving lost margins, based upon differences in the net price paid for PAPI, and not lost sales. On January 26, 1996, Utah Foam filed a motion for recusal, on the ground that the district court judge had exhibited bias against Utah Foam and favoritism for one of Upjohn's counsel. After a hearing, the district court denied the motion.

Utah Foam's fraud and negligent misrepresentation claims went to trial before a jury on February 20, 1996. See Utah Foam, 930 F. Supp. at 515. The jury found that Upjohn had made fraudulent and negligent misrepresentations to Utah Foam regarding the price of PAPI, and awarded Utah Foam $313,593 in compensatory damages plus $5.5 million in punitive damages. See id. at 516. Upjohn moved under Federal Rule of Civil Procedure 50(b) to vacate or adjust the award of compensatory damages on Utah Foam's fraud and negligent misrepresentation claims. See id. at 518. The court refused to vacate the award, but reduced the amount of compensatory damages to $303,573.11. See id. at 518-22, 532. The district court also denied Upjohn's Rule 50(b) motion to vacate the award of punitive damages, but granted its motion for remittitur, reducing the

punitive damages award to $607,142.22.  See id. at 523-32.  In addition, the district court denied Utah Foam's motion for prejudgment interest.  See id. at 522-23.  The district court then issued an order offering Utah Foam the option of accepting remittitur or undergoing a new trial on all issues.  See Utah Foam Prods. Co. v. The Upjohn Co., No. 87-C-955G, at 5-6 (D. Utah Nov. 19, 1996) (unpublished order).  Utah Foam accepted remittitur.

Utah Foam now appeals the district court's evidentiary rulings restricting the discovery of Upjohn's PAPI 135 sales records, prohibiting discovery of CPR's records, and limiting Utah Foam's experts' testimony as to estimated losses and damages; the district court's denial of prejudgment interest; the district court's dismissal of Utah Foam's Utah Unfair Practices claim; and the district court's denial of Utah Foam's motion to recuse.  Upjohn cross-appeals the district court's refusal to grant Upjohn's Rule 50(b) motion to vacate the jury's finding of liability for fraud and negligent misrepresentation.

## I.  Acceptance of remittitur

In Donovan v. Penn Shipping Co., Inc., 429 U.S. 648, 650 (1977) (per curiam), the Supreme Court reiterated "the longstanding rule that a plaintiff in federal court, whether prosecuting a state or federal cause of action, may not appeal from a remittitur order he has accepted."  The policy underlying this rule

sounds in contract law. By accepting remittitur of damages in lieu of a new trial, the plaintiff has accepted the benefit of not having to undergo the rigors, risks, and costs of a new trial in exchange for an agreement not to challenge the damages award or otherwise appeal any matter pertaining to the issues covered by the remittitur offer. However, a party who has accepted remittitur of damages on one cause of action may still appeal issues related to other causes of action not subject to the remittitur order. See Denholm v. Houghton Mifflin Co., 912 F.2d 357, 359 & n.2 (9th Cir. 1990) (listing cases); Call Carl, Inc. v. BP Oil Corp., 554 F.2d 623, 626-27 (4th Cir. 1977); Bruce I. McDaniel, Annotation, Plaintiff's Right to Appeal Adverse Judgment on One Cause of Action As Affected by Acceptance of Remittitur on Another Cause of Action, 41 A.L.R. Fed. 856, 857 (1979).

In Alley v. Gubser Dev. Co., 785 F.2d 849, 856-57 (10th Cir. 1986), the district court gave the plaintiffs a choice between remittitur of the jury's punitive damages award or a new trial on all issues. The plaintiffs chose remittitur. When the plaintiffs attempted to appeal the district court's denial of attorney's fees and prejudgment interest on the compensatory damages, we held that they were barred from doing so under Donovan. See id. In short, the well-established rule is that acceptance of remittitur of damages effectively waives the right to appeal any issue pertaining to the causes of action covered by the remittitur offer. See

- 6 -

Denholm, 912 F.2d at 360-61 (acceptance of remittitur of compensatory damages bars appeal of pretrial orders excluding evidence relevant to proving those damages). Moreover, acceptance of remittitur of either compensatory or punitive damages bars appeal of issues related to both. See Alley, 785 F.2d at 857 ('[T]he district court's remittitur embraced all issues considered in the case and . . . the Alleys' acceptance of the remittited judgment waives their right to appeal these issues."); see also Lanier v. Sallas, 777 F.2d 321, 322 (5th Cir. 1985) (because punitive damages and compensatory damages based upon same cause of action are "inextricably intertwined," acceptance of remittitur of compensatory damages barred appeal of district court's refusal to submit issue of punitive damages to the jury).

Here, Utah Foam does not dispute that it had the choice of accepting either remittitur of its damages based upon its fraud and negligent misrepresentation claims or face a new trial on those claims. Nor does Utah Foam attack the district court's decision to impose remittitur, but rather seeks to appeal the court's rulings on issues directly related to Utah Foam's claims at trial, namely, the district court's denial of pre-judgment interest, its rulings limiting the scope of discovery of Upjohn's PAPI records, its ruling denying discovery of CPR's PAPI documents, and its limitation of Utah Foam's experts' testimony as to the calculation of damages. Because Utah Foam accepted remittitur of damages on

its fraud and negligent misrepresentation claims and thereby avoided a complete retrial of those issues, <u>Alley</u> bars Utah Foam's appeal of all issues which relate to those claims. We find that Utah Foam's acceptance of remittitur waived the right to appeal these issues and decline to consider them now.

## II. Utah Unfair Practices Act claim

Because the Utah Unfair Practices Act claim did not go before the jury in this case and the district court did not order a retrial of that claim in the event Utah Foam did not accept the remittitur on the fraud and negligent misrepresentation claims, Utah Foam did not waive the right to appeal the dismissal by summary judgment of the Unfair Practices Act claim. <u>See</u> <u>Call Carl</u>, 554 F.2d at 626-27 (acceptance of remittitur on fraud and deceit count does not preclude appeal of directed verdict on Sherman Act count). We review a grant of summary judgment de novo, applying the same standard as the district court. <u>See</u> <u>Sports Racing Servs., Inc. v. Sports Car Club of America, Inc.</u>, 131 F.3d 874, 882 (10th Cir. 1997). After reviewing the record on appeal, we conclude that the district court did not err in granting Upjohn's motion for summary judgment on Utah Foam's price discrimination claim.

Discrimination in pricing is illegal "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any

line of commerce . . . ." Utah Code Ann. § 13-5-3(1)(a) (1996); see Burt v. Woolsulate, Inc., 146 P.2d 203, 205 (Utah 1944) ("It is not every discrimination in price that is outlawed by the Utah Act, but only those which tend to substantially lessen competition or tend to create a monopoly."). The party alleging illegal pricing discrimination bears the burden of showing that the illegal conduct may have substantially impacted competition. See Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 796-97 (10th Cir. 1970); Burt, 146 P.2d at 205. Under Utah law, the term "commerce" means "intrastate commerce in the state of Utah." Utah Code Ann. § 13-5-5 (1996). It is not clear that the commerce affected here was intrastate commerce. See Belliston v. Texaco, Inc., 521 P.2d 379, 381-82 (Utah 1974). However, even if the affected commerce was intrastate, we agree with the district court that it was not substantially lessened by the defendants' conduct, and accordingly we affirm.

At summary judgment, the district court held that Utah Foam could only prove discriminatory pricing damages totaling $18,981 and could not prove injury to competition. Thus, the district court dismissed the claim because Utah Foam had failed to show that Upjohn's price discrimination substantially impacted competition in the Utah insulating foam market, as required by the statute. We have carefully reviewed the district court's order and the record, applying the same standard used by the district court. We agree with the analysis and findings

of the district court. Accordingly, we affirm the district court's conclusion that the defendant was entitled to summary judgment because its acts of discriminatory pricing did not have, and were not likely to have, the effect of substantially lessening competition or a tendency to create a monopoly in any line of commerce.[2]

### III. Evidentiary issues

Utah Foam asserts that the district court erred in not allowing it to discover Upjohn's PAPI 135 sales records and records of transfers of PAPI from Upjohn to CPR, and claims that if it were allowed to present this evidence, its anticompetitive damages would be shown to have had more than a de minimus effect on commerce in Utah. We review the district court's decision to exclude evidence at the summary judgment stage for abuse of discretion. See Sports Car Racing Servs., 131 F.3d at 894.

Under the Utah price discrimination statute, comparisons of allegedly similar discriminatory sales must be made among sales of products of "like grade and quality." Utah Code Ann. § 13-5-3(1)(a) (1996). The plaintiff bears the burden of proving that the products in question were of like grade and quality.

---

[2] We disagree with Utah Foam's argument that the grant of summary judgment against it on its state discriminatory pricing claim is inconsistent with the jury verdict holding Upjohn liable for fraud and negligent misrepresentation.

See Liggett Group, Inc. v. Brown & Williamson Tobacco Corp., 1989-1 Trade Cas. (CCH) ¶ 68,583, at 61,103 (M.D.N.C. 1988).[3] "In fashioning a 'like grade and quality' standard, courts have generally emphasized the presence, or absence, [of] significant physical differences between products and the effect of those differences upon consumer preferences." Id. (listing cases). Also relevant to the inquiry is whether there are "differences in the way in which a customer can or must use the product." J.P. Ludington, Annotation, What Are "Commodities" and "Commodities of Like Grade and Quality," within Provision of Robinson-Patman Act Prohibiting Price Discrimination Between Different Purchasers of Commodities of Like Grade and Quality– Federal Cases, 16 L. Ed. 2d 1097, 1101 (1967). Thus, "bona fide physical differences affecting consumer use or marketability should be sufficient to cause products not to be of like grade and quality." ABA Section of Antitrust Law, Antitrust Law Developments 444-45 (4th ed. 1997).

Although Utah Foam asserts that PAPI 27 and PAPI 135 are very similar in structure and may be used interchangeably, it is undisputed that PAPI 27 and

_____

[3] Because we find no controlling Utah law construing the phrase "like grade and quality," we look to federal law for guidance. See Belliston v. Texaco, Inc., 521 P.2d 379, 380 (Utah 1974) ("Except for the jurisdictional requirements, the language of Section 3(a) of the Unfair Practices Act is substantially similar to the provisions of Section 13(a) of the Robinson-Patman Act."); cf. Evans v. State, – P.2d –, 1998 WL 327681, at *3 (Utah June 23, 1998) (citing Utah Code Ann. § 76-10-926).

PAPI 135 differ, mainly in terms of viscosity and reactivity, particularly in colder situations. As a result, some consumers prefer one over the other; Utah Foam's own president admitted in his affidavit and during depositions that the company had a clear preference for PAPI 27 over PAPI 135 because of PAPI 27's superior performance qualities at high altitudes. Thus, the district court did not err in holding that, for the purposes of Utah Foam's price discrimination claim, PAPI 135 was not a product of "like grade and quality" to PAPI 27 and in refusing to order discovery of Upjohn's PAPI 135 sales records for the purposes of Utah Foam's price discrimination claim.

Utah Foam also argues that the court erred in not allowing it to discover CPR's PAPI records. According to Utah Foam, CPR, a producer of foam insulation systems, was both a competitor of Utah Foam in the Utah market and an economic entity independent from Upjohn. Because the district court held CPR to be economically indivisible from Upjohn, and because there was no evidence offered that Upjohn used CPR to sell raw PAPI 27 to Utah Foam's competitors at lower prices than those available to Utah Foam, the court held that Upjohn's transfers of PAPI to CPR were not within the purview of the Utah price discrimination statute.

It is well established that a defendant's transfers of product to a wholly owned subsidiary is an intra-corporate transfer and not a "sale" for purposes of a

price discrimination claim.  See City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 277-79 (8th Cir. 1988); Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 221 (6th Cir. 1985); Security Tire & Rubber Co. v. Gates Rubber Co., 598 F.2d 962, 966 (5th Cir. 1979).  This is because the wholly owned subsidiary and the parent company are seen as a single economic actor.  See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 770-71 (1984) (In the context of Section 1 of the Sherman Act, "A parent and its wholly owned subsidiary have a complete unity of interest.  Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one.  They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver.  With or without a formal 'agreement,' the subsidiary acts for the benefit of the parent, its sole shareholder.")

Utah Foam claims that CPR was in fact an "independent subsidiary" of Upjohn, and therefore transfers of PAPI 27 from Upjohn to CPR should be treated as "sales" under the price discrimination statute.  Utah Foam points to the following factors, all based upon the testimony of Upjohn's Keith Edmonson, Vice President and General Manager of Upjohn's Chemical Division, as evidence that CPR was sufficiently independent from Upjohn so as to render the two separate economic entities:

(1) The title of goods passed to CPR when the product was shipped; (2) CPR recommended prices of the PAPI and systems it sold, which prices were never overruled by Upjohn; (3) Upjohn's divisions, like Polymer and CPR, were allowed to set their own prices; (4) CPR had its own payroll department and personnel department; (5) CPR made decisions as to whom and to where it would sell its products; (6) CPR could reject the product it received from Upjohn based on its quality; and (7) CPR had its own accounting department and separate checking accounts.

(See Aplt. Br. at 26 (record citations omitted).) None of this evidence tends to show that CPR was anything but an individual corporate "horse" pulling together with its sister divisions for the benefit of their common "driver," namely, Upjohn. See Copperweld, 467 U.S. at 771. For its part, Upjohn points to evidence that all of CPR's essential activities were overseen by Mr. Edmondson, who wielded final executive decision-making and accounting power over CPR. Simply because Upjohn granted its CPR Division some measure of free reign over its activities does not diminish the fact that the evidence shows that CPR operated solely for the benefit and under the ultimate control of Upjohn. We conclude that the district court did not abuse its discretion in holding that all transfers of PAPI 27 from Upjohn's Chemicals Division to CPR were intra-company transfers and not "sales" under the Utah price discrimination statute.

In the alternative, Utah Foam claims that even if Upjohn and CPR were a single economic entity, we should still find CPR's sales records to be discoverable in order to determine whether CPR sold PAPI 27 to Utah Foam's

competitors, in which case CPR's sales could be attributed to its parent, Upjohn. However, the record shows that CPR sold complete foam spray systems, and not raw PAPI 27. Therefore, the district court did not abuse its discretion in deeming CPR's sales records irrelevant to this lawsuit.

## IV. Recusal

Regarding recusal, Utah Foam merely argues that if we remand the case we should send it back to a different judge on the ground that Judge Greene erred in refusing Utah Foam's request that he recuse himself. Because we have identified no reason for remanding this case, we consider this argument moot.[4]

## V. Upjohn's Cross-Appeal

Upjohn appeals the district court's refusal to vacate the jury verdict finding it liable to Utah Foam for damages caused by its negligent misrepresentation and fraud. We examine the negligent misrepresentation claim first.

---

[4] Even if we were to treat this claim as an independent argument for reversal, we would find no error.

## A. Negligent Misrepresentation

Upjohn claims that under the negligent misrepresentation theory of liability Utah Foam can only recover for the difference between the price it paid for the product and the fair market value of the product. Upjohn then asserts that because Utah Foam did not and cannot prove the fair market value of PAPI during the times in question, it must lose on this claim as a matter of law. We disagree.

Here, Upjohn does not dispute that the elements of negligent misrepresentation were proved at trial. Instead, Upjohn argues that the *damages* proved by Utah Foam are inappropriate for this claim, namely, that Utah Foam only proved "benefit of the bargain" loss as opposed to pecuniary loss based on the difference between the price it paid for PAPI and the fair market price.

Under Utah law, the measure of damages for negligent misrepresentation includes the amount of money necessary to compensate the plaintiff for its detrimental reliance. See Forsberg v. Burningham & Kimball, 892 P.2d 23, 27 (Utah Ct. App. 1995). Such damages include "'the difference between the value of what [plaintiff] has received in the transaction and its purchase price or other value given.'" Id. (quoting Restatement (Second) of Torts § 552(B)(1)(a) (1976)).

Here, the district court did just that. It held that the "market price" for this case was not the price of PAPI on the open market but rather the price paid by

Utah Foam's competitors. <u>See</u> <u>Utah Foam</u>, 930 F. Supp. at 522. This approach to calculating the difference between the value Utah Foam thought it was getting and the actual value of the PAPI comports with the law in Utah. Thus, we affirm the jury verdict against Upjohn for negligent misrepresentation.

## B. Fraud

At trial, the jury found Utah Foam's actual damages caused by Upjohn's negligent misrepresentation and fraud to be identical: $313,593. Utah Foam was awarded this single amount, minus post-trial reductions by the district court. Because on appeal Upjohn does not challenge the propriety of the negligent misrepresentation verdict in Utah Foam's favor (other than the damages calculation), because the jury found Utah Foam's damages from the two causes of actions to be singular, and because we affirm the negligent misrepresentation damages award, we need not address Upjohn's argument that the district court erred in refusing to grant its motion to vacate the jury verdict as to Utah Foam's fraud claim.

## Conclusion

For the reasons stated above, the judgment below is AFFIRMED.